UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ROMERO-MARCIAL,<br>Petitioner,<br>v.<br>WARDEN, Adelanto ICE Processing Center, et al.,<br>Respondents. | Case No. 5:26-cv-05724-PD<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**<br><br>**A# 205-700-760** |

Jorge Romero-Marcial ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking release from Respondents' custody, or in the alternative, a bond hearing. Dkt. No. 1. The Court has reviewed the relevant pleadings, including the Petition and attached exhibits, Respondents' answer, Petitioner's reply, and the supplemental submissions by the parties.

For the reasons discussed below, the Petition is granted in part.

## I. Background

Petitioner entered the United States in 2007 with his parents when he was seventeen years old. Dkt. No. 1, Petition ¶ 24. On January 7, 2014,

Petitioner and his wife were issued a Notice to Appear and placed in removal proceedings. On November 4, 2014, his removal proceedings were administratively closed upon the joint request of Petitioner and the Department of Homeland Security ("DHS").[1]

On October 7, 2019, Immigration and Customs Enforcement ("ICE") placed Petitioner and his wife on orders of release on recognizance with in-person reporting at the Ventura sub-office. *Id.* ¶ 27. Thereafter, Petitioner alleges he complied with every condition of his release. However, at some point, and unbeknownst to Petitioner, his administratively closed case was reopened and set for hearing. Petitioner alleges he was never served with written notice of the hearing or any proceeding. On May 14, 2026, Petitioner was ordered removed *in absentia*.

On September 22, 2026, Petitioner was detained at his scheduled ICE check-in; this was the first time he learned that a removal order existed. *Id.* ¶ 32. Petitioner was detained without any individualized determination that he presented a flight risk or danger and was subsequently transferred to the Adelanto ICE Processing Center. On September 25, 2026, Petitioner filed a motion to reopen and rescind his *in absentia* order, which, according to Petitioner, automatically stayed his removal. *Id.* ¶ 4 (citing 8 U.S.C. § 1229a(b)(5)(C); 8 C.F.R. § 1003.23(b)(4)(ii)).

On September 28, 2026, Petitioner filed this habeas action in the Central District of California, arguing that his re-detention without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act ("INA"). However, unbeknownst to Petitioner's counsel at the time he filed the Petition, on September 26, 2026,

---

[1] Petitioner alleges the joint request to close his removal proceedings was based on his youth at entry, his clean record, his employment and tax history, and his U.S. citizen son. Petition ¶ 25.

Petitioner was transferred to El Paso, Texas by Respondents, ostensibly to execute his removal order. Dkt. No. 10, Reply at 4–5.

On October 5, 2026, in response to a call that Petitioner would be removed, counsel emailed the ICE Office of the Chief Counsel El Paso duty inbox and notified ICE of the automatic stay and asked for written confirmation that Petitioner would not be removed. *Id.* at 5. Counsel received confirmation from a Deportation Officer later that day that Petitioner would not be removed. On that same day, counsel in the ICE Office of the Principal Legal Advisor emailed Petitioner's counsel, stating: "DHS just learned that the Court granted your Motion to Reopen. ERO has knowledge of this ruling and case will be returned to court's proceedings." *Id.* at 5–6.

As of the date of this Order, Petitioner's removal proceedings are reopened, and his case information on the Executive Office for Immigration Review website reflects that his "case is pending". *See* https://acis.eoir.justice.gov/en/; Dkt. No. 10 at 6 ("Petitioner's removal proceedings accordingly have been reopened and are pending.").

## II. Discussion

The Petition raises two claims: (1) Petitioner's re-detention without a pre-detention hearing violated due process; and (2) his re-detention without an individualized determination violated the Immigration and Nationality Act ("INA").

Respondents' answer did not substantively address Petitioner's claims but only asserted that the Court lacked jurisdiction because Petitioner was not detained in the Central District of California when he filed the Petition, but in fact had been transferred by Respondents to Texas two days prior. Dkt. No. 9 (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004)). On October 13, 2026, Petitioner filed a notice stating that on October 12, 2026, he informed his partner that he was transferred back to Adelanto, California. Dkt. No. 12.

After Petitioner provided further evidence that he was detained in the Central District of California, Dkt. Nos. 15, 16, and after the Court noted that the ICE Locator website reflected that Petitioner is currently detained at Adelanto as of October 26, 2026, the Court ordered Respondents to provide a supplement to their jurisdiction argument. Dkt. No. 17. Respondents' supplement, filed October 28, 2026, states that "in light of Petitioner's transfer back to the Central District of California, Respondents no longer contest the Court's jurisdiction over the habeas petition." Dkt. No. 18. Respondents have provided no further argument regarding the instant Petition. As of the date of this order, the Court confirms that the ICE Locator Website reflects that Petitioner is detained at Adelanto. *See* https://locator.ice.gov/odls/#/search.

**A. Procedural Due Process**

Petitioner argues his re-detention without notice or a pre-detention hearing violated due process. Courts in this district have repeatedly found claims like this one meritorious. *See Herman v. DHS*, No. 26-cv-01995-MBK, 2026 WL 1723960, at * 4 (C.D Cal. June 12, 2026); *Aperyan v. Semaia*, No. 26-cv-00699-WLH-AYP, 2026 WL 874734, at *4 (C.D. Cal. Mar. 27, 2026); *Meneses v. Santacruz*, 811 F. Supp. 3d 1158 (C.D. Cal. 2025); *M.V.F. v. Santacruz*, No. 25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").

Evaluation of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1. Protected Liberty Interest**

Conditional release from physical restraint may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Once an individual is granted conditional release, therefore, he may have a protected liberty interest in remaining in the community—and an attendant right to procedural protections before that liberty is revoked. *See id.* (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts compare the form of conditional release at issue with the parolee's liberty interest as described in *Morrissey*. *See González-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole enables a parolee "to do a wide range of things" available to individuals who have never been convicted of any crime—to live at home, work, be with his friends and family, and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," including monitoring and requiring authorization to work and travel, the parolee's "condition is very

different from that of confinement in a prison." *Id.* Moreover, a parolee "relie[s] on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty. *Id.* at 481–84.

Petitioner was released under conditions after his removal proceedings were administratively closed. His release was an implicit promise that he would be able to stay in the community so long as he complied with the release conditions. The Court thus easily concludes—as have many courts in this Circuit—that once Petitioner was released on bond, he gained a protected liberty interest in remaining out of custody. *E.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody"); *Wei v. Warden Adelanto ICE Processing Center*, No. 5:26-cv-03064-BFM, 2026 WL 1771047, at * 2 (June 17, 2026) (collecting cases).

**2. Process Owed in Connection with Re-Detention**

As Petitioner has a protected liberty interest in his conditional release, the question is what process he is owed before the government would take that liberty interest away. Petitioner claims that due process required process before he was taken into custody, and thus the appropriate habeas remedy is for him to be released back to the community on the conditions that existed prior to his re-detention.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that

*Mathews* applies in immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Regarding the first factor, as set forth above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining out of custody. Since 2011, he has resided in Southern California, where he has worked and attended adult school classes. Petition ¶ 24. On October 7, 2019, ICE placed him on an order of release on recognizance, with in-person reporting requirements. *Id.* ¶ 27. During this time, Petitioner and his wife have provided for their three U.S. citizen children. According to his unrebutted allegations, Petitioner has complied with every condition of his release and has no criminal convictions. *Id.* ¶¶ 34, 43. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

While Petitioner remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Pinchi*, 792 F. Supp. 3d at 1032 (N.D. Cal. 2025) (collecting cases). Accordingly, this factor weighs in Petitioner's favor.

Turning to the second *Mathews* factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And where a petitioner did not receive any pre-deprivation custody hearing or other process in connection with the revocation of his release, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Respondents do not identify any process in place to ensure that individuals in Petitioner's position are not taken into custody improperly. Civil immigration detention is constitutionally permissible only to prevent flight or protect against danger to the community. *See Zadvydas*, 533 U.S. at 690. Those factors determine whether detention is appropriate under § 1226(a), *see Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), and those factors necessarily were found when DHS initially released Petitioner. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1167 (S.D. Cal. 2025) ("In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.' "); *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted) (a petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk"). And once he was released, Petitioner had a liberty interest in remaining at liberty unless he no longer meets those criteria. *Espinoza v. Kaiser*, No. 1:25-cv-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (cleaned up). Respondents have not shown that anyone, let alone a neutral decisionmaker, considered whether there were changed circumstances that warranted Petitioner's re-detention, or

that there was any process in place to make such a finding before he was taken into detention.

As to the third *Mathews* factor, Respondents do not articulate any countervailing government interest that supports only providing this process after Petitioner's re-detention. Due process "usually" requires a hearing before the State deprives a person of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. *Id.* at 128. Respondents do not argue that either exception applies here. There is no argument that quick action was necessary here. Petitioner voluntarily appeared at his scheduled ICE check-in and then was taken into custody. Petition ¶ 32. Accordingly, this factor favors Petitioner.

Because each of the *Mathews* factors favors Petitioner's pre-deprivation process claim, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.[2] Since this claim affords the greatest relief, the Court declines to address the Petition's remaining claim.

---

[2] Further, Respondents' failure to oppose Petitioner's claim itself is a basis to grant the Petition. *See Soleimani v. Larose*, No.: 25-cv-3082-DMS-DEB, 2025 WL 3268412, *3 (S.D. Cal. 2025) (granting habeas petition where government's answer to the petition did not respond to all claims in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, *4 (C.D. Cal. 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession).

## III. Conclusion

For the reasons stated, the Court ORDERS the following:

The Petition is granted as to Count One and the remaining count is dismissed without prejudice.

Respondents shall release Petitioner Jorge Romero-Marcial (A# 205-700-760) from immigration custody within 24 hours of this Order under the terms and conditions of Petitioner's existing release, as if Petitioner had not been detained. This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future enforcement actions after release must comply with Due Process requirements.

Respondents shall return to Petitioner any of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

Further, Respondents shall file a status report within three days of this Order (1) confirming Petitioner's release, and (2) confirming the return to Petitioner of his personal belongings.

DATED: October 30, 2026

Patricia Donahue
United States Magistrate Judge